**In the Matter of the ESTATE of Amy C. BLIVEN, Deceased.**

No. 2–57194.

Supreme Court of Iowa.

Dec. 17, 1975.

Richard C. Turner, Atty. Gen., George W. Murray, Special Asst. Atty. Gen. and Gerald A. Kuehn, Asst. Atty. Gen., for appellant.

Iver Christofferson, David R. Mason and Wallace Reed, Cedar Falls, for appellees.

Ahlers, Cooney, Dorweiler, Allbee, Haynie & Smith, Des Moines, for Drake University, amicus curiae.

Heard by MOORE, C. J., and RAWLINGS, LeGRAND, REES and McCORMICK, JJ.

RAWLINGS, Justice.

Petition by executor of the Amy C. Bliven estate (intestate) for declaratory judgment (Section 633.11, The Code 1971) resulted in final adjudication by trial court holding funds passing to charitable institutions pursuant to settlement agreement in avoidance of a will contest are exempt from Iowa inheritance tax under § 450.4(2). Iowa Department of Revenue (Department) appeals. We reverse.

In November 1969, Marjorie Besh, current executor, was appointed decedent's guardian and conservator. About Christmas of the same year Besh entered decedent's bedroom and discovered the latter had torn up an instrument identified as her last will and testament. A copy of the destroyed document was obtained from which it appeared, except for a few modest bequests to some friends and relatives, decedent's estate was bequeathed to two lawfully recognized out-of-state charitable institutions.

August 29, 1971, Amy C. Bliven died leaving three heirs at law. They contended the aforesaid will had been effectively revoked, consequently decedent had died intestate. The charities claimed decedent did not possess mental capacity to revoke her will. In avoidance of litigation the heirs and charities stipulated (1) the will had been revoked; (2) decedent died intestate; (3) all legal claims and administration costs be paid by the executor; and (4) remainder of the estate be thus distributed:

Rispah Yockey—25%

Carol Ann Nelson—12½%

Donald Robert Yockey—12½%

Maine Children's Home for Little Wanderers—25%

Pine Tree Society for Crippled Children and Adults, Inc.—25%

In approving the plan thus agreed upon trial court held decedent died intestate and this holding is not disputed.

Thereupon the executor filed a final inheritance tax return showing, in part, distribution to the charities as exempt from inheritance tax. Executor maintained assets going to the charities in accord with the settlement agreement "passed in any manner" within the terms of Code § 450.-4(2), quoted *infra*, thus exempt from such taxation.

Department contended: (1) the exemption provided by § 450.4(2) was not applicable since transfer to the charities was not one which would have been taxable in the first instance under § 450.3, even without

the exemption statute, because such transfer was not by will or under statutes of inheritance and (2) title to property passing under the terms of a settlement agreement does not bypass those who would have taken under the statutes of intestate succession.

As above noted, the executor then petitioned for declaratory judgment, thereby seeking an adjudication to the effect the portion of estate assets devolving to the above named charities be held exempt from any inheritance tax. Department resisted upon the basis above set forth.

After attendant hearing trial court held, in essence, decedent died intestate and the portion of her estate going to the charities pursuant to the above noted agreement "passed in any manner" so it came within the purview of Code § 450.4(2), being therefore exempt from inheritance tax.

Incidentally, Drake University Law School has favored us with a brief, amicus curiae, in support of trial court's holding.

The question here posed may be thus stated: Where heirs at law and charitable organizations enter into a court approved will contest avoidance agreement for distribution of an intestate's estate to such heirs and charities in designated proportions, is the share accordingly conveyed to the charities exempt from inheritance tax?

■ I. The issue presented does not involve a matter for fact determination but rather one of statutory interpretation and application. Our review is de novo. We are not bound by trial court's determination of law. See *Estate of Dieleman v. Department of Revenue,* 222 N.W.2d 459, 460 (Iowa 1974); 2A Sutherland, Statutory Construction, § 45.04 (Sands 4th ed. 1973).

II. In approaching the problem at hand, reference must be had to certain basic principles of statutory interpretation.

Without question, the involved controversy demonstrates existent ambiguity in the terms and application of Code § 450.4(2).

See 2A Sutherland, Statutory Construction, § 45.02 (Sands 4th ed. 1973).

■ Mindful thereof, we first note *Northern Natural Gas Company v. Forst,* 205 N.W.2d 692, 695 (Iowa 1973). This court there held a manifest legislative intent will prevail over literal import of words used. It is also essential we examine both the language used and purpose for which the legislation was enacted. In seeking the meaning of a law the entire act should be considered and each section construed with the act as a whole and all parts thereof construed together. The subject matter, reason, consequence and spirit of an enactment must be considered, as well as words used. Additionally, a statute should be accorded a sensible, practical, workable and logical construction.

■ In the same vein, numerous statutes pertaining to the same subject must be considered, so the concept of *pari materia* comes into play. See *State v. Bartz,* 224 N.W.2d 632, 635 (Iowa 1974); *Goergen v. State Tax Commission,* 165 N.W.2d 782, 785–786 (Iowa 1969); 2A Sutherland, Statutory Construction, §§ 51.02–51.03 (Sands 4th ed. 1973).

■ Furthermore, all relevant legislative enactments must be harmonized, each with the other, so as to give meaning to all if possible. We must thus determine the legislative objective and in so doing proceed upon the premise our General Assembly intended its enactments be accorded a practical application leading to a reasonable result which will accomplish, not defeat, their purpose. See *Domain Industries v. First Sec. Bank & Trust,* 230 N.W.2d 165, 169 (Iowa 1975); *Osborne v. Edison,* 211 N.W.2d 696, 697 (Iowa 1973); *Northwestern Bell Tel. Co. v. Hawkeye State Tel. Co.,* 165 N.W.2d 771, 774–775 (Iowa 1969); *In re Estate of Klug,* 251 Iowa 1128, 1131–1132, 104 N.W.2d 600 (1960); 2A Sutherland, Statutory Construction, § 45.12 (Sands 4th ed. 1973); 23 Am.Jur.2d, Descent and Distribution, § 15; 26A C.J.S. Descent & Distribution § 6.

■ It is also understood tax exemption statutes are to be strictly construed in favor of taxation. See *In re Estate of Waddington,* 201 N.W.2d 77, 79 (Iowa 1972) and citations; *Wisconsin Evangelical Lutheran Synod v. Regis,* 197 N.W.2d 355, 356 (Iowa 1972).

III. At the outset Code § 450.2 provides, in relevant part:

"The estates of all deceased persons in any property * * * whether such estates consist of real, personal, or mixed property, tangible or intangible, and any interest in, or income from, any such estate or property which estate or property is, at the death of the decedent owner within this state, * * * *which shall pass in any manner herein described* shall be subject to tax as herein provided." (Emphasis supplied).

Next is § 450.3 and to the extent here material it mandates:

"The tax hereby imposed shall be collected upon the net market value and shall go into the general fund of the state to be determined as herein provided, of any property passing:

"1. *By will or under the statutes of inheritance* of this or any other state or country." (Emphasis supplied).

And the aforementioned § 450.4(2) states, in relevant part:

"The tax imposed by this chapter shall not be collected:

"1. * * *

"2. *When the property passes in any manner* to societies, institutions or associations incorporated or organized under the laws of this state for charitable, educational, or religious purposes, and which are not operated for pecuniary profit, * * * provided, however, that this exemption shall also include property passing to any society, institution or association incorporated or organized under the laws of any other state for charitable, educational or religious purposes, and which are not operated for pecuniary profit * * *." (Emphasis supplied).

By virtue of the italicized portion of § 450.2, quoted above, we have searched chapter 450 in a futile effort to find therein any provision which even intimates a recognition of the passing of property rights from a decedent in any manner other than by terms of a will or intestate succession.

IV. Another related enactment on the same subject, § 633.350, says:

"Except as otherwise provided in this Code, *when a person dies, the title to his property, real and personal, passes to the person to whom it is devised by his last will, or, in the absence of such disposition, to the persons who succeed to his estate as provided in this Code,* but all of his property shall be subject to the possession of the personal representative as provided in section 633.351 and to the control of the court for the purposes of administration, sale, or other disposition under the provisions of law, and such property, except homestead and other exempt property, shall be chargeable with the payment of debts and charges against his estate. There shall be no priority as between real and personal property, except as provided in this Code or by the will of the decedent." (Emphasis supplied).

This signifies that upon her death Amy C. Bliven's property, real and personal, automatically passed to and title immediately vested in her above named heirs at law, subject only to sale, administration and attendant costs provided by law. See *De-Long v. Scott,* 217 N.W.2d 635, 637 (Iowa 1974); *Clarken v. Brown,* 258 Iowa 18, 25, 137 N.W.2d 376 (1965); Bar Committee Comment, Code § 633.350, 47 Iowa Code Ann. at 39; S. Webster, "Decedents' Estates: Succession and Administration", 49 Iowa L.Rev. 638, 658 (1964); Atkinson, Law of Wills, § 14 at 60 (2d ed. 1953); 23 Am. Jur.2d, Descent and Distribution, §§ 21–24; 26A C.J.S. Descent & Distribution § 65.

■ It is also understood an heir's interest in property acquired by intestate succession is assignable and transferable immedi-

ately on the death by which it vests under the law of descent and distribution. See 23 Am.Jur.2d, Descent and Distribution, § 160; 26A C.J.S. Descent & Distribution §§ 75–76.

■ Clearly, said charities acquired no property right whatsoever by intestate succession from Amy C. Bliven. Consequently, any interest those organizations obtained in property held by decedent at time of her death must have been by conveyance or assignment from decedent's heirs at law. See *Seeley v. Seeley,* 242 Iowa 220, 225, 45 N.W.2d 881 (1951); *In re Jorgensen's Estate,* 267 Wis. 1, 64 N.W.2d 430, 434 (1954).

In summary, the estate of said decedent (1) passed instanter upon death to her heirs at law and (2) they, in turn, as was their lawful right, assigned to the two instantly involved charities an aggregate 50% share of the estate by way of compromise and settlement.

From this flows the conclusion our inheritance tax exemption statute never came into play as to any right in said estate indirectly acquired, as aforesaid, by these charitable organizations, i. e., no inheritance, no exemption. See 85 C.J.S. Taxation § 1142.

■ V. Pursuing the subject further, it is well established an inheritance tax is a charge, not on the property left by a decedent, but rather on the privilege to receive same by will or intestate succession. See *In re Estate of Klug, supra,* 251 Iowa at 1138, 104 N.W.2d at 606; *In re Wise's Will,* 20 A.D.2d 55, 244 N.Y.S.2d 960, 964 (1963); *In re Snyder's Estate,* 74 S.D. 14, 48 N.W.2d 238, 239 (1951); Black's Law Dictionary, "Inheritance Tax" at 922 (rev. 4th ed. 1968).

Code § 450.10 clearly imposes such a tax upon any and all legacies or statutory successions coming within the provisions of chapter 450. But, as demonstrated above, property rights acquired by the two charities passed to them only by assignment from decedent's heirs, separate and apart from her death. See 85 C.J.S. Taxation § 1143a, b, c.

By virtue of the fact that Amy C. Bliven's heirs were the only parties standing in a position to inherit, it follows the statutorily provided inheritance tax was instantly applicable to their entire intestate succession rights as of the date of the ancestor's death. This was actually the basis upon which Department acted.

■ Moreover, these two charities neither stand in the position of creditors, nor can payment of the estate share going to them under the aforesaid stipulation qualify as expenses in settlement of the estate. See *In re Estate of Waddington, supra,* 201 N.W.2d at 78–79.

■ VI. Executor urges the heirs renounced their right to 50% of decedent's estate. Apparently, the idea thus espoused is that if the heirs disavowed a portion of the estate which passed to them, such portion would somehow be mystically channeled directly from decedent ·to the two charities. We disagree.

As noted above, decedent died August 29, 1971. The settlement agreement between the heirs and the charities was negotiated and approved in October 1972. In the interim, April 22, 1972, the legislature adopted § 633.704, The Code, regarding the right of distributees to disclaim succession. See Sixty-Fourth Session of the General Assembly, Chapter 1128, Section 11.

Assuming, without deciding, § 633.704 was here applicable and the heirs had complied therewith, then the 50% portion disclaimed by them would pass " * * * as if the disclaimant[s] ha[d] predeceased the decedent * * *." Section 633.704(3). In short, such disclaimed portion would pass in the manner provided by § 633.219. In no event, however, could the charities thereby benefit. See generally *Coomes v. Finegan,* 233 Iowa 448, 449–453, 7 N.W.2d 729 (1943); Atkinson, Law of Wills, §§ 139–140, at 774–786 (2d ed. 1953); 23 Am.Jur.2d, Descent and Distribution, §§ 171–174; 26A C.J.S. Descent & Distribution § 64d; 28 Iowa L.Rev. 700 (1943).

VII. In light of the foregoing, this court now concludes that by use of the term "passes in any manner" found in Code § 450.4(2), quoted above, the legislature meant "passes in any manner by will or intestate succession directly from a decedent." See Code §§ 450.2, 450.3, 633.350, all quoted supra; 85 C.J.S. Taxation § 1142.

Any other conclusion would open the door to infinite subtle schemes designed to evade the lawful imposition of inheritance taxes.

We now hold the entirety of Amy C. Bliven's estate passed by intestate succession directly to her above named heirs at law and was accordingly subject to the inheritance tax imposed by Code ch. 450, absent any § 450.4 exemption. Trial court erred in holding to the contrary.

This case must therefore be reversed and remanded with instructions that the judgment from which appeal is here taken be set aside and appropriate adjudication be thereupon entered consistent with this opinion.

Reversed and remanded with instructions.