In the Matter of the ESTATE OF Charles Wayne VAN DUZER.

F. Kenneth VAN DUZER, Executor of the Estate of Charles Wayne Van Duzer, Appellant,

v.

IOWA STATE DEPARTMENT OF REVENUE, and Iowa State Board of Tax Review, Appellees,

and

IOWA STATE DEPARTMENT OF REVENUE and Iowa State Board of Tax Review, Appellants,

v.

F. Kenneth VAN DUZER, Executor of the Estate of Charles Wayne Van Duzer, Appellee.

No. 84–268.

Supreme Court of Iowa.

June 19, 1985.

Thomas C. Teas and Mark A. Wilson of Finley & Teas, Mason City, for F. Kenneth Van Duzer.

Thomas J. Miller, Atty. Gen., and Harry M. Griger, Sp. Asst. Atty. Gen., for Iowa State Dept. of Revenue and Iowa State Bd. of Tax Review.

Considered by REYNOLDSON, C.J., and UHLENHOPP, HARRIS, LARSON and CARTER, JJ.

CARTER, Justice.

Petitioner, F. Kenneth Van Duzer, the executor of the estate of Charles Wayne

Van Duzer, appeals from a district court decision approving the department of revenue's inclusion of the corpus of an *inter vivos* trust in the computation of inheritance tax to be paid by estate beneficiaries and also approving the department's allocation of a portion of the federal estate tax deduction to out-of-state property. The department of revenue has cross-appealed from that portion of the district court decision which held that certain payments to decedent's surviving spouse were eligible for spousal exemption and tax rate status under Iowa Code sections 450.9(1) and 450.-10(1).

Decedent executed a will in 1971. In 1973, he executed an irrevocable *inter vivos* trust which transferred farmland to two trustees. Decedent married his surviving spouse in 1974. In 1977, decedent died leaving a net probate estate of $2605.25. In addition, decedent, at the time of his death, owned real estate in California with a gross value of $52,500 and a net value, after deducting encumbrances, of $10,787.

Under the provisions of the *inter vivos* trust, the trustees were given absolute discretion to accumulate the trust income or to distribute it to decedent during his lifetime. Decedent retained the power to dispose of the corpus of the trust through a general power of appointment exercisable by will. Decedent also had the authority to appoint the successor trustees. The trust instrument provided that, if decedent died without exercising his power of appointment, a life income interest in the trust was created in decedent's sister and nieces and upon their death the corpus of the trust was to be distributed to certain designated beneficiaries.

From the time of the creation of the trust until the date of his death, decedent was paid by the trustees $127,900 of the $166,705 in income produced by the trust corpus. Decedent died without exercising his power of appointment. Decedent's surviving spouse elected to take against the will. In addition, she commenced an action against the estate alleging that the trust was illusory, failed *ab initio*, and that the trust assets were to be considered as part of the probate estate for purposes of computing her statutory share. The surviving spouse was paid $106,500 in settlement of those claims against the estate pursuant to an agreement entered into with the executor of the estate, the trustees, and the beneficiaries of the estate and trust.

The department of revenue included all of the trust corpus, with a value of approximately $575,000, in its computation of the inheritance tax to be paid by the beneficiaries. The department did not permit the $106,500 paid to the surviving spouse to qualify for spousal exemption or spousal tax rate status under Iowa Code sections 450.9(1) or 450.10(1). In computing the amount of the federal estate tax deduction for purposes of the Iowa inheritance tax return filed by the executor, the department allocated a portion of that deduction to the California real estate. As a result, less than the entire federal estate tax paid was allowed to be claimed as a deduction on the Iowa inheritance tax return. The formula under which the allocation to out-of-state property was made was based on the ratio of the Iowa gross estate to the gross estate included in the computation of the federal estate tax.

The executor pursued a protest with respect to the inclusion of the trust corpus in the inheritance tax calculations, the denial of surviving spouse exemption status and tax rate status to the settlement entered into with the surviving spouse, and the method of allocating the federal estate tax deduction. These matters were considered by both the director of revenue and the Iowa State Board of Tax Review, and the department's calculations were affirmed. Petitioner then filed a petition for judicial review which resulted in the district court affirming the department's determinations involving inclusion of the trust corpus and allocation of the federal estate tax deduction, but reversing the department's determination that payments to the surviving spouse did not qualify for spousal exemption or spousal tax rate status. We sepa-

rately consider each of the three issues presented by this appeal.

I. *Whether Corpus of the Trust is Subject to Iowa Inheritance Taxes Imposed by Iowa Code Section 450.3(3) (1977).*

The first issue presented is whether the department of revenue erred by including the corpus of the *inter vivos* trust in its determination of inheritance taxes owed under Iowa Code section 450.3(3) (1977). The executor maintains that it did. The district court held that it did not.

The applicable statute provides:

The tax hereby imposed shall be collected upon the net market value ... of any property passing:

. . . .

3. By deed, grant, sale, gift or transfer made or intended to take effect in possession or enjoyment after the death of the grantor or donor. A transfer of property in respect of which the transferor reserves to himself a life income or interest shall be deemed to have been intended to take effect in possession or enjoyment at death, provided, that if the transferor reserves to himself less than the entire income or interest, the transfer shall be deemed taxable thereunder only to the extent of a like proportion of the value of the property transferred.

The first sentence of subparagraph (3) of section 450.3 mandates the collection of the inheritance tax by the department of revenue on all property passing by transfers "made or intended to take effect after the death of the grantor or donor." As we stated in *In re Estate of English*, 206 N.W.2d 305, 308 (Iowa 1973), "[t]he intent of inheritance tax statutes is to reach transfers linked to the death of decedents as opposed to complete, inter vivos transfers."

The second sentence of subparagraph (3) appears to be intended to cover those transactions which are ostensibly *inter vivos* transfers, effective when executed, but in which the transferor reserves some beneficial interest. In such situations, the statute treats the value of the reserved interest as if passing upon the death of the transferor, regardless of the form of the transaction. In *English* and the cases of *In re Estate of Sayres*, 245 Iowa 132, 60 N.W.2d 120 (1953) and *In re Estate of Toy*, 220 Iowa 825, 263 N.W. 501 (1935), we considered the application of the second sentence of subparagraph (3) and gave some indication of how much must be retained by the transferor in order for an apparent *inter vivos* transfer to be subjected, in whole or in part, to the inheritance tax. The executor urges that, because the distribution of income from the trust in the present case was completely discretionary on the part of the trustees, the decedent retained no interest which would render the transfer subject to inheritance tax upon his death. The force of this argument is diminished by the fact that, without regard to the extent of the interest reserved by decedent, the transfer of the corpus of the trust to the ultimate beneficiaries thereof was expressly designated to take effect after the death of the grantor or donor. This was true regardless of whether these interests vested as a result of decedent's exercise of his power of appointment or, upon his failure to appoint, by the terms of the trust instrument itself.

■ The value of the trust corpus included in the calculation of inheritance taxes owed was thus proper under the first sentence of subparagraph (3) without regard to the second sentence. The district court was correct in upholding the decision of the department of revenue on this issue.

II. *Whether the Payment to the Surviving Spouse Qualifies for Spousal Exemption and Tax Rate Status Under Iowa Code Sections 450.9(1) and 450.10(1) (1977).*

The next issue presented arises from the department of revenue's appeal from the district court's determination that the $106,500 payment to the surviving spouse qualifies for spousal exemption and tax rate status under Iowa Code sections 450.9(1) and 450.10(1) (1977). The department urges that our decision in *In re Estate of Wells*, 142 Iowa 255, 120 N.W. 713 (1909),

establishes the proposition that sums paid in settlement of claims against an estate by reputed heirs or beneficiaries are not to be considered as establishing the right of the recipients to receive the money in the same capacity which is asserted as the basis for their claims. The department also relies on *In the Matter of the Estate of Bliven*, 236 N.W.2d 366 (Iowa 1975), as supporting the same proposition.

We believe the cited cases are clearly distinguishable from the present case. The claimants in *Wells* were persons not named in decedent's will or otherwise entitled to claim against the estate. The same is true of the charities which were the claimants in *Bliven*. In the present case, the claim was made by the person who was the decedent's surviving spouse and, as such, entitled to a distributive share by reason of her election to take against the will. Her claim was against the executor and the gravamen thereof concerned the amount of such statutory share. While based upon various theories, all aspects of her claim involved the alleged invalidity *ab initio* of the *inter vivos* trust, a circumstance which, if correct, would increase the share passing to the surviving spouse. To the extent the claims of the surviving spouse had merit, it was (a) the duty of the executor to seek return of assets in the possession of the trustees and administer them as estate assets, and (b) the obligation of the trustees to return those assets to the estate.

Within the context in which it was made, we view the settlement agreement under which payment was made to the surviving spouse as a *tripartite* agreement whereby the trustee agreed to return $106,500 to the estate, and the executor agreed to pay an identical sum to the surviving spouse in satisfaction of her distributive share. It doubtless would have made a better record if separate checks were issued for this purpose, a deposit to the estate account had been documented and a court order had been obtained authorizing the payment of a distributive share in the sum agreed to in the settlement. But, like the district court, we do not believe that such formality was essential in order to recognize the transaction to be that which it clearly was. The district court did not err in its conclusion that the payment of $106,500 to the surviving spouse qualifies for the spousal exemption and tax rate status under Iowa Code sections 450.9(1) and 450.10(1) (1977).

III. *Whether Apportionment of Federal Estate Tax Deduction to Out-of-State Property Based on Ratio of Gross Asset Values is Proper.*

The final issue to be considered is whether the department of revenue correctly apportioned the federal estate tax deduction so as to reflect the portion of that tax attributable to decedent's Iowa property. Such apportionment is required as a result of Iowa Code section 450.12(1) (1977) which provides, in part:

There shall be deducted from the gross value of the estate ... the debts defined as follows:

1. From the estate of such decedent who at the time of his death was domiciled within this state ... federal taxes owing by the decedent or *paid from the estate on Iowa property*....

(Emphasis added.) The department of revenue asserted in the district court and asserts in this court that its determination of the portion of the federal estate tax attributable to decedent's Iowa property is based on a long-standing administrative practice going back at least as far as our decision in *In re Estate of Evans*, 246 Iowa 893, 68 N.W.2d 289 (1955) (a proceeding where apportionment based on gross asset value was applied but the validity of that approach was not urged on appeal).

The department's practice has been to apportion the federal estate tax paid in the ratio of the gross value of Iowa assets to the gross value of all assets owned by a decedent at time of death. As applied to the present case, that formula permitted only 94.37 percent of the federal estate tax paid by the estate to be deducted under section 450.12(1) (1977).

The executor urges that, because the only out-of-state asset was real estate with

a gross value of $52,500 and a net value of only $10,787, apportionment of the federal estate tax based on gross values inaccurately reflects the portion of that tax attributable to the out-of-state asset. The federal estate tax is not assessed against gross asset values but rather against gross values reduced by certain allowable deductions including, in the present case, the mortgage on the California real estate. As a result, an apportionment formula based only on the relationship of gross asset values will often fail to precisely reflect the portion of the federal tax attributable to the Iowa estate. On the other hand, the factors which produce the final amount owed in federal estate taxes are exceedingly complex thereby rendering it unlikely that a perfect formula can be devised. Given the duration of the administrative practice of utilizing a gross asset formula, the apparent acquiescence of the legislature in that practice over many years, and the legislature's ultimate codification of the practice,[1] we are reluctant to require the department at this late date to develop a more finite method of apportionment in the application of the former statute.

We have recognized that in the interpretation of revenue statutes "[legislative] acquiescence in the departmental construction must be considered as strong evidence of its intent." *State ex rel. Pew v. Independent Order of Foresters*, 226 Iowa 1339, 1345, 286 N.W. 425, 428 (1939). Moreover, we have recognized that, while the amendment of a statute by a subsequently elected legislative body does not provide a strong indication of the intent of an earlier legislative body, we may, depending upon the circumstances, view the subsequent amendment as a clarification of the meaning of the original statute. *Dye v. Markey*, 259 Iowa 1045, 1047–48, 147 N.W.2d 42, 43–44 (1966); *Prudential Insurance Co. v. Lowry*, 225 Iowa 60, 67–70, 279 N.W. 132, 134 (1938); *Slutts v. Dana*, 138 Iowa 244, 250, 115 N.W. 1115, 1118 (1908); *Rural Independent School District No. 10 v. New Independent School District*, 120 Iowa 119, 125, 94 N.W. 284, 286 (1903).

▪ Under the circumstances presented in the present case, including the legislative acquiescence in the department's practice, we believe that the 1983 amendment is indicative of the proper interpretation to be given the statute involved in the present transaction. We hold the district court did not err in approving the method employed by the department in apportioning the federal estate tax. We have considered all issues presented and find no basis for disturbing the decision of the district court. Costs on appeal are assessed one-third to the department of revenue; two-thirds to the executor.

AFFIRMED.