# IN THE COURT OF APPEALS OF IOWA

No. 16-1974
Filed September 13, 2017

**BEVERLY GARDINER NANCE,**
    Petitioner-Appellant,

vs.

**IOWA DEPARTMENT OF REVENUE,**
    Defendant-Appellee.
_____

Appeal from the Iowa District Court for Polk County, Michael D. Huppert, Judge.

Beverly Gardiner Nance appeals from an adverse judgment on judicial review of the department of revenue's denial of her request for a partial refund on an inheritance tax payment. **REVERSED AND REMANDED.**

David M. Repp and F. Richard Lyford of Dickinson, Mackaman, Tyler & Hagen, P.C., Des Moines, for appellant.

Thomas J. Miller, Attorney General, Donald D. Stanley Jr., Special Assistant Attorney General, and Hristo Chaprazov, Assistant Attorney General, for appellee.

Considered by Danilson, C.J., and Potterfield and Bower, JJ.

CLERK OF SUPREME COURT

SEP 13, 2017

ELECTRONICALLY FILED

**DANILSON, Chief Judge.**

Beverly Gardiner Nance unsuccessfully sought judicial review from the Iowa Department of Revenue's (the Department) denial of her request for a partial refund of an inheritance tax payment. On appeal, she contends the distribution of a decedent's assets pursuant to a Family Settlement Agreement (FSA) should govern the imposition of inheritance taxes if the FSA was made in good faith and not for the purpose of avoiding taxes. Because we conclude the Department and the district court misapplied the law, we reverse and remand to the district court for remand to the Department for further proceedings consistent with this opinion.

**I. Scope and Standard of Review.**

Our review of this appeal from a judicial-review decision is governed by Iowa Code section 17A.19(10) (2016). *Brakke v. Iowa Dep't of Nat. Res.*, 897 N.W.2d 522, 530 (Iowa 2017). We, like the district court, function in an appellate capacity to correct any errors of law on the part of the agency. *See id.* If we reach the same conclusions as the district court, we affirm; otherwise, we reverse. *Iowa Ag Constr. Co. v. Iowa State Bd. of Tax Review*, 723 N.W.2d 167, 172 (Iowa 2006). Our review here is limited to deciding whether the Department's application of the relevant law to the facts of this contested case was irrational, illogical, or wholly unjustifiable. *See* Iowa Code § 17A.19(10)(m); *Iowa Ag. Constr.*, 723 N.W.2d at 174.

**II. Background Facts.**

In 2003, Lester Gardiner Sr. and Mildred Gardiner executed a transfer-on-death (TOD) agreement for their brokerage accounts. They named their son,

Lester Jr., as the beneficiary, and Lester Jr.'s wife, Beverly, as the contingent beneficiary.

Mildred died in 2004, Lester Jr. died in 2007, and Lester Sr. died in 2009. Lester Sr.'s three grandchildren (Beverly's stepchildren) were the beneficiaries and executors of Lester Sr.'s estate.

**1. Estate versus Beverly.**

In May 2009, the Estate of Lester Sr. (by the grandchildren) filed an action against Beverly to challenge the validity of the TOD agreement, claiming Lester Sr. had not been competent to execute it.[1] During the pendency of that action, the estate filed an inheritance tax return and remitted $18,988 to the Department based on the TOD designation for the assets of the brokerage accounts. This Dallas County lawsuit was resolved as a result of mediation which resulted in the execution of a FSA in July 2010, providing the assets of the brokerage accounts would be divided equally between the estate and Beverly.

**2. Estate versus Department of Revenue.**

*a. Agency action.* The estate filed an amended inheritance tax return with the Department and requested a $10,034 refund to reflect the revised distribution of the account assets. The estate reasoned the account assets that ultimately passed to the grandchildren by virtue of the FSA were exempt from the

---

[1] Iowa Code section 633D.11 (2017) (transferred from section 633.810 by the Code Editor for Code Supp. 2005) provides: "A transfer on death resulting from a registration in beneficiary form shall be effective by reason of the contract regarding the registration between the owner and the registering entity under the provisions of this chapter, and is not testamentary."

inheritance tax as property passing to lineal descendants.[2]  The request was rejected.[3]

Beverly[4] then filed a protest.  An administrative law judge (ALJ) held a hearing on the matter and denied the request for a refund.  Relying on *In re Estate of Bliven*, 236 N.W.2d 366, 371 (Iowa 1975), the ALJ concluded the FSA "has no bearing on whether a taxable event occurred when the accounts passed to" Beverly.  The ALJ ruled:

> The accounts are subject to inheritance tax unless one of the exemptions from Iowa Code chapter 450 applies.  While property passing directly from the decedent to his grandchildren would be exempt from taxation, the accounts passed directly to [Beverly], and not his grandchildren.  [Beverly] has not alleged one of the exemptions from Iowa Code chapter 450 applies in this case.  The department properly denied [her] request for a refund.

(Footnotes omitted.)

Beverly appealed to the director of the Department.  The director adopted the ALJ's findings and conclusions as "expanded and modified."  The director rejected the argument that the issue was controlled by *In re Estate of Van Duzer*, 369 N.W.2d 407 (Iowa 1985), writing:

> *Van Duzer* hinged on the fact that the claimant in that case— decedent's surviving spouse—was entitled to a distributive share [from the decedent's estate] by reason of her election to take against the will.  *See* 369 N.W.2d at 410.  In the context of that

---

[2] "In computing the tax on the net estate, the entire amount of property, interest in property, and income passing to . . . lineal descendants . . . are exempt from tax."  *See* Iowa Code § 450.9 (2009).

[3] The Department sent a letter to the estate dated November 3, 2010, stating in part: "The department of revenue does not accept family settlement agreements to change the calculation of the tax.  Refer to the department's administrative rules [Iowa Administrative Code] rule 86.14(2)."

[4] The record is not clear how Beverly came to present the estate's protest.  In her appellate brief to this court, Beverly indicates the estate has since closed and that it transferred to her any claim it might have to a refund.  The State does not dispute this fact in its brief and so we accept this fact as undisputed.

case, the Iowa Supreme Court viewed the settlement agreement as "a *tripartite* agreement whereby the trustee agreed to return $106,500 to the estate, and the executor agreed to pay an identical sum to the surviving spouse in satisfaction of her distributive share." *Id.* In other words, the decedent's surviving spouse did not receive the funds at issue from parties to the settlement agreement, but rather from the decedent by claiming against his will. *See id.*

This Protest is factually distinct from *Van Duzer* and more akin to *Bliven*. The court in *Van Duzer* noted that *Bliven* was "clearly distinguishable" from *Van Duzer* because *Bliven* did not involve parties that could elect to make a claim for a distributive share against the estate. *Id.* . . .

Like *Bliven*, in this case, [Beverly] and the decedent's beneficiaries [who] entered into the [FSA] could not elect to take a distributive share against the decedent's will. Under *Bliven*, in the case at hand, the portion of the TOD that [Beverly] agreed to give to decedent's beneficiaries under the [FSA] passed not from decedent's estate to the beneficiaries but from [Beverly] to the beneficiaries. Therefore, as the [ALJ] properly held, the fact that [Beverly] and decedent's beneficiaries entered into a [FSA] has no bearing on whether a taxable event occurred when the TOD passed to [Beverly].[5]

***b. Judicial review sought in district court.*** Beverly sought judicial review in the district court. The district court noted Beverly did not challenge the Department's factual findings on judicial review. The court determined the Department was correct in concluding *Bliven* controlled the present case. It also found:

As noted by both the ALJ and the director, the only proof [of Lester Sr.'s incompetency] offered by the petitioner was the opinions of Dr. Bender, someone who never examined or even observed Lester Sr. at any point in time prior to his death. The only basis for his opinions was the aforementioned status examinations, which again were not administered by Dr. Bender.

As the trier of fact in this contested case proceeding, it was the director's prerogative to weigh the evidence and make the ultimate decision on whether it met the aforementioned burden; that conclusion was n[ot] irrational, illogical, or wholly unjustifiable.

---

[5] In addition, the director concluded Beverly had failed to meet her burden of proof to establish "the decedent was incompetent when he executed the TOD." The Department's finding, or authority to determine competency, are not at issue on appeal.

**III. Discussion.**

On appeal, Beverly contends this court should follow a rule enunciated in federal courts—a FSA can control inheritance tax consequences when: (1) the underlying claim was based on enforceable legal rights of the claimant, (2) the parties to the agreement were truly adversarial, (3) the agreement was entered into in good faith as the result of arm's-length negotiations, and (4) no evidence exists suggesting the agreement was entered into for postmortem tax planning purposes. *See Estate of Hubert v. Comm'r*, 101 T.C. 314, 319-21 (1993), *aff'd*, 63 F.3d 1083 (11th Cir. 1995); *see also* Treas. Reg. § 20.2056(e)-2(d)(2); *Comm'r v. Estate of Bosch*, 387 U.S. 456, 467 (1967); *Estate of Brandon v. Comm'r*, 828 F.2d 493 (8th Cir. 1987). But federal law differs from Iowa law with respect to inheritance tax and, consequently, the federal authorities interpreting the federal law are not helpful.[6]

At first blush, the holding in *Bliven* appears to control. But upon a close review of the facts, it is apparent the facts in the instant case are much closer to the facts in *Van Duzer*. Thus, we are unable to agree with the district court and the law applied by the Department, and we conclude the decision reached by the Department was irrational, illogical, and wholly unjustifiable.

Both this case and *Van Duzer*, involved the estate attempting to collect assets believed to be property of the estate. In *Van Duzer*, the court stated,

---

[6] *See, e.g., In re Will of Miller*, 438 N.W.2d 228, 231 (Iowa Ct. App. 1989) ("Iowa inheritance tax, unlike federal estate tax, is not a tax on the estate of the decedent but is a tax on each right of succession and is chargeable to the property each beneficiary receives.").

We believe the cited cases are clearly distinguishable from the present case. The claimants in [*In re Estate of*] *Wells*, [120 N.W. 713 (Iowa 1909)], were persons not named in decedent's will or otherwise entitled to claim against the estate. The same is true of the charities which were the claimants in *Bliven*. In the present case, the claim was made by the person who was the decedent's surviving spouse and, as such, entitled to a distributive share by reason of her election to take against the will. Her claim was against the executor and the gravamen thereof concerned the amount of such statutory share. While based upon various theories, all aspects of her claim involved the alleged invalidity *ab initio* of the *inter vivos* trust, a circumstance which, if correct, would increase the share passing to the surviving spouse. To the extent the claims of the surviving spouse had merit, it was (a) the duty of the executor to seek return of assets in the possession of the trustees and administer them as estate assets, and (b) the obligation of the trustees to return those assets to the estate.

369 N.W.2d at 410.

Here, Beverly was not a person "named in decedent's will or otherwise entitled to claim against the estate." But Beverly was not the "claimant." Rather the estate on behalf of, and as agent for, the devisees was the claimant. The Department also contends, "The lynchpin of the *Estate of Van Duzer* holding is the fact that the claimant in that case—the decedent's surviving spouse was 'entitled to a distributive share [from the decedent's estate] by reason of her election to take against the will.'" But the significant fact in *Van Duzer* was not that the claimant was a surviving spouse entitled to take against the will but the fact that the surviving spouse was entitled to a distributive share of the estate. Clearly, the estate was representing the devisees in this action, and the devisees were entitled to distributive share of the estate similar to the surviving spouse in *Van Duzer*. *See* Iowa Code § 633.3(14) (defining a distributee as "a person entitled to any property of the decedent under the decedent's will or under the statutes of intestate succession").

Moreover, if the claim against Beverly had merit, the executor had a duty to seek the return of the assets and the share of the heirs would have increased. As it turned out, the estate's claim had sufficient merit to cause the parties to enter into an agreement requiring Beverly to forego one-half of the value of the brokerage accounts—thereby increasing the devisees' shares—much akin to how the surviving spouse's share was increased in *Van Duzer*.

Similar to the settlement agreement in *Van Duzer*, the settlement agreement here could be viewed as a tripartite agreement. *See* 369 N.W.2d at 410. The agreement provided that the funds in the Edward D. Jones accounts were to be liquidated to cash. Secondly, one-half of the funds in the accounts were to be distributed to the estate; and thirdly, the estate would then pay the sum it received to the devisees. This agreement and method of distribution was pursuant to a court order approving the family settlement filed September 3, 2010.

The new Iowa Code chapter 633D, pertaining to TOD accounts "do[es] not limit the rights of creditors or security owners against beneficiaries and other transferees under other laws of this state." Iowa Code § 633D.11(2). Further, the provisions of chapter 633D are supplemented by principles of law and equity. The fact that contract principles would apply was observed *In re Estate of Myers*, 825 N.W.2d 1, 6-7 (Iowa 2012),

> [Pay-on-death] POD accounts, such as the checking and certificate of deposit accounts here, and annuities are nonprobate assets. 1 Sheldon F. Kurtz, *Kurtz on Iowa Estates: Intestacy, Wills, and Estate Administration* § 11.1, at 451 (3d ed. 1995). Nonprobate assets are interests in property that pass outside of the decedent's probate estate to a designated beneficiary upon the decedent's death. *Id.* Although these assets are the personal

property of the grantor *before* death, they become the personal property of the designated beneficiaries upon the grantor's death pursuant to a contract between the grantor and the administrator of the account. *See Karsenty v. Schoukroun*, 959 A.2d 1147, 1158 (2008) (holding that a TOD account was not part of the decedent's testate estate because the decedent's interest in the property did not survive his death, which is when the TOD account "transferred to [the beneficiary] . . . 'by reason of the contract' between him and [the administrator of the account]"); Restatement (Third) of Property: Wills and Other Donative Transfers § 1.1 cmt. b, illus. 12, at 10 (1999) ("Because [the grantor's] ownership interest in the account and in the securities expired on her death, no part of the balance in the account at her death or of the securities is included in [the grantor's] probate estate."); *see also* Iowa Code § 633D.11(1) (2009) ("A transfer on death resulting from a registration in beneficiary form shall be effective by reason of the contract regarding the registration between the owner and the registering entity under the provisions of this chapter, and is not testamentary.").

(Emphasis in original.) Clearly the principle that the property in a TOD account becomes the property of the designated beneficiary immediately upon death presumes a valid contract.

One of the basic principles of contract law is if a party to a contract does not have sufficient capability to understand the contract, the contract is void. *See Allen v. Berryhill*, 27 Iowa 534, 537 (1869). Further, "[a] higher degree of mental competence is required for the transaction of ordinary business and the making of contracts than is necessary for testamentary disposition of property." *In re Estate of Fair*, 159 N.W.2d 417, 420 (Iowa 1968).

We agree the Department may not always be bound to family agreements and the Department has an obligation to collect inheritance taxes on schemes to avoid paying the taxes. But here, if the estate had presented overwhelming evidence that Lester D. Gardiner Sr. was incompetent, perhaps the Department would not have refused the refund. Moreover, instead of an issue of competency

to contract, what if there was overwhelming evidence the contract was the product of dependent adult abuse by undue influence? Would the Department take the same position? Surely there can be no dispute that if the contract between the grantor and the administrator of the account is not valid, the property does not pass outside of the probate estate and belongs to the estate.

Here, there is no evidence of a scheme to avoid taxes and, by all indications, the settlement agreement was entered into by the parties in good faith. We decline to weigh the judgment of Beverly in entering into the settlement agreement by attempting to weigh the evidence of incompetency. Other factors exist that cause parties to reach a compromise beyond the likelihood of success at trial.

We are unable to agree with the district court and conclude the Department's decision was irrational, illogical, and wholly unjustifiable. We reverse and remand for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**



IOWA APPELLATE COURTS

## State of Iowa Courts

**Case Number**
16-1974

**Case Title**
Nance v. Department of Revenue

Electronically signed on 2017-09-13 09:26:25